49 CCPA

**GOLDENROD ICE CREAM COMPANY,**
Appellant,

v.

**LOUISVILLE PECAN COMPANY,**
Appellee.

Patent Appeal No. 6824.

United States Court of Customs and Patent Appeals.

July 18, 1962.

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

John B. Hosty, Chicago, Ill., for appellant.

Parker & Walsh, Washington, D. C. (Raymond A. Walsh, Washington, D. C., of counsel) for appellee.

Before WORLEY, Chief Judge, and RICH, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

The Louisville Pecan Company seeks registration of "GOLDENROD" for use on "Shelled Pecans," alleging use since 1958. Registration is opposed by the Goldenrod Ice Cream Company which alleges use of "GOLDENROD" since 1916 on its products including packaged "butter pecan" ice cream.

The record consists of the application, the pleadings and the stipulated facts on behalf of opposer.

It appears that opposer and its predecessors have since 1918 continuously manufactured and sold its ice cream products under the mark "GOLDENROD," advertising through various media.

Since opposer is the prior user, the only issue is whether applicant's use of the same mark on the instant products would be likely to result in confusion, mistake or deception of purchasers so that registration is precluded under Section 2(d) of the Lanham Act, 15 U.S.C.A. § 1052 (d).

In dismissing the opposition, the board stated:

> "While shelled pecans and ice cream are food products which are sold through the same retail stores, they, nevertheless, are distinctly different types of products, the one being essentially a grocery item and the other a perishable confection, and as such, ordinarily are marketed under different circumstances in different departments or sections of such stores. Under these circumstances, it is not likely that pur-

chasers would, merely because of the identity of the marks, attribute such products to a common source."

We are unable to obtain from this record the assurance it seems to have provided the board, viz., that purchasers would not be likely to attribute the instant products to a common source.

The record is silent regarding the channels of trade and the marketing methods employed by the respective parties. We think, however, the board's view that the goods are sold through the same retail outlets is a reasonable assumption. We also agree that they are "distinctly different types of products" but not so distinct, when weighed with other elements, as to preclude a likelihood of confusion.

We have no way of knowing whether the products "ordinarily are marketed under different circumstances in different departments or sections of such stores," but even if those assumptions are valid they can hardly be considered decisive. It may well be that in the cavernous confines of the modern super market the products are actually sold in different departments or sections of the stores. However, that situation is far less likely to exist in the "corner groceries," which we suggest are doubtless more numerous.

Although the products are clearly distinct, the fact remains that they are both food products, presumably of a relatively inexpensive nature; that they are sold through the same outlets, in packages as opposed to bulk units, and both bear the identical mark "GOLDENROD." Under such circumstances we are inclined to think that the average purchaser would be likely to assume the products emanated from the same source. At least we feel obliged to resolve any doubt on that score in favor of the first user. Rank Cintel Limited v. Kay Lab, 288 F.2d 938, 48 CCPA 893.

The decision is reversed.

Reversed.

MARTIN, J., did not sit or participate because of illness.

